Thank you. The government was investigating a man that my client Guido Bravatti called Uncle Louie, and they wanted him to become an informant against the man he called Uncle Louie. So they assigned Stephen Corso to make Guido Bravatti a criminal. The judge pro, in this case, granted an extreme variance or departure, whatever you want to call it. The guideline range in this case was 51 to 63 months. He knew that Guido Bravatti would be deported as a result of this case. He's a Guatemala citizen. But that isn't why he granted the variance that he did to time served, which was the one day he spent processing with the marshals. He did it because, and this is from page 77 of the sentencing transcript, where, absent the circumstances you represented, which he's talking about Stephen Corso asking him to help Uncle Louie out by providing drugs to the Hollywood types that would buy his script. And this is what Judge Pro said. You probably would not have engaged in the conduct. I think that the law on predisposition and inducement and entrapment is a little confused, and it's difficult to reconcile the cases that say you must, you are limited in time to the time before contact by government agents in examining predisposition. And the government will have to admit here that there's absolutely no evidence whatsoever of any kind that Guido Bravatti or his co-defendant were at all predisposed prior to the time that Stephen Corso came to them to try to get them to sell him drugs. But I think the Pullman case helps to straighten out the conflict when you also see the language in cases. I think it's gotten a little conflated over time in most cases. Most cases don't have facts like these. And I think it's gotten conflated because you hear language in these cases that say, well, but you're not limited to the time before. It seems like you have two conflicting rules. Well, I think they probably goes the farthest to straighten it out. Judge Kaczynski's opinion talks about inducement and defines inducement. And I believe that the proper rule is, the clearest rule is, when you look at the different cases that define this time period and what evidence you can consider, is that when there is evidence of inducement, then you can only look to evidence of predisposition which has occurred prior to the inducing conduct by the government. So how do you define inducement? If the government agent just says, you know, can you go out and get some drugs, and the person says yes, is that inducement? That's not inducement. That is not inducement. In fact, that's very clear on page 701 of Pullman. What the opinion says is an inducement consists of opportunity plus something else. And the opinion says that can come in two forms. In Pullman, it was the first form. In our case, it's the second form. The first form discussed in Pullman is excessive pressure on the defendant. That was Jacobson as well, the U.S. Supreme Court case. Or, Pullman says, the government's taking advantage of an alternative non-criminal type of motive. And that's what we're talking about here. So, for instance, or an undercover guy on the street just out there looking for drugs, and they say, oh, can you get me some drugs? They say yes. That's not what happened here. What happened here is that it was introduced, and in the record you will see the transcripts. They weren't admitted to the jury, but you'll see the transcripts of the tapes that were there. And constantly coming back to, you're going to seal this deal for Uncle Louie by helping us out here. You even had Bravatti and Eppolito coming back and saying, we don't F around with drugs. He said, but you're going to seal this deal if you can get this for me. Okay? Granted, the time period was short, in which there was about a ---- I'm having a little trouble. This, you're not arguing that the instruction was wrong? No, I'm not. I'm arguing that as a matter of law, because the facts are undisputed, that there was no evidence of predisposition prior to the actions of the government. The instruction did the same thing that Judge Pro did when he denied the 29A. The instruction simply threw in, you can consider evidence after the contact by the agents as predisposition. The instruction is wrong, but if you were to reverse, if we were to raise the instruction issue, we'd be back in the same place. The evidence is going to be the same if you go back. We've tried this case four times so far. But the jury saw the video? Well, it wasn't really the video that was the issue. It was the audio that was the issue, because the video was just the culmination of the deal. It was the next day, they were handing over the drugs. It was the audio. The jury did see the audio, but the jury was told, again, what the mistake was. And there was an objection to the instruction, but what the mistake was. And there was also the same argument made at the 29A motion. Judge, you can't consider evidence that happens in response to the inducing conduct of the agents. You can't consider that. And if you don't consider that, there is no evidence of predisposition. And I think, again, going back to the Pullman case, that's where you find that if you if, and Judge Pro put it right in the sentencing memorandum. He found that there was inducement. He wouldn't have let the case go to the jury had he not found that there was inducement. The mistake that was made, the legal error that was made, was by looking at the lack of hesitation after the contact by the agents. Because there's no evidence before. And that's why there's no disputed issue of fact. And that they were entitled to judgment as a matter of law on this issue. There's really, the government can't argue that there was no inducement. They can say, well, there wasn't a lot. And maybe there wasn't a lot of evidence with regard to the relationship. But it's clear that under the Pullman definition of what inducement is, the government's taking advantage of an alternative, non-criminal type of motive. That occurred here. That's what happened here. That was the intent of the government to take advantage of that. What evidence was presented to the jury regarding the government taking advantage of the motive that these young men had? It was right on the audio tape. It was throughout the entirety of the case. So that was presented to the jury. And the jury rejected that argument, right? Because they were told, and this is using the same analysis that Judge Proh used for the 29A, which is erroneous, that it was the response to the inducement that could be used as evidence of predisposition. So why aren't you arguing instructional error then? Because this is a matter of law. Because if there was some evidence of predisposition, and there was some choice that the court had to make, but there wasn't. But if your argument is the only reason the jury found this way is because they were told they were considered this, they could consider this, that is an instructional error argument. It is also an instructional error, Your Honor. That's what I'm arguing, is that if you apply the correct law to the state of the case when the government rested, then as a matter of law, the judgment should have been entered on behalf of the defendants. But you're not arguing that the – I'm trying to – just to understand how we would write an opinion here. Because the Pullman case is a little bit more of a ruse than we have here. I just – I – are you saying that there must be some evidence manifesting by the – that the government must show some manifestation by the defendant of willingness before a government contact? The government's burden when they have – when there is inducement, the government's burden is to produce evidence of predisposition – evidence of predisposition present prior to the conduct of the agents, the contact by the agents, which is what Jacobson says. And it's what Pullman says. What happened here was – is that – is that it got conflated with the circumstance in which there isn't inducement, where you – where it's simply an opportunity. And again, it's opportunity plus. And we have opportunity plus. And I think the only way to straighten out – because I admit that the case law is confusing on this issue. But I think if we take Pullman and build on it and say when there is evidence of opportunity plus, then use the language from Jacobson which says you must – the government's burden then is to produce evidence of predisposition that occurs prior to the contact by the agents. But Pullman says if a defendant is predisposed to commit the offense, he will require little or no inducement to do so. Conversely, if the government must work hard to induce a defendant, it is far less likely that he was predisposed. So that implies that you can look at the behavior following the inducement because otherwise you wouldn't be looking at whether or not the government had to work hard for the defendant to commit the offense. But then – then the Pullman opinion goes on to say that you cannot look to evidence that occurs after – after the contact because that's why we call it predisposition. That's contradictory then. I agree. Which is contradictory. And so we have to choose which language we think better fits this situation. I'm – I'm offering – I guess I'm saying that this is the opportunity to straighten it out because the – because the facts are so clear in this case and so undisputed. Okay, Ms. Corbin. Thank you. We understand. Seventeen seconds. You're over. Good morning. May it please the Court. Good morning, Counsel. Elizabeth Olsen for the United States. On the question of inducement, I – I would just like to say that the government does dispute whether there was inducement. And we did. The district court sent the issue to the jury. And – and in the defense's opening brief, they suggest that by denying the Rule 29 based on the evidence of predisposition, that somehow took the – took the issue of inducement off the table. But that's not how I read the record. And I'd refer the Court to pages 268 and 269 of the excerpts of record. What the – what the district court judge said was he acknowledged the argument that the defendants were making. That they were saying that – that the informant was pulling on the heartstrings and was pushing all the buttons. But then he said – and this is on the top of 269 – it should be up to the jury to decide whether an otherwise law-abiding citizen would choose to sell drugs simply to help Uncle Lou produce a movie script. Right? And that was – that was the issue of the inducement. This Court has defined inducement as repeated or persistent solicitation or as persuasion which would overcome an otherwise law – law-abiding citizen's natural reluctance to engage in criminal activity. And so the question, hey, I will help your friend's father with something he wants help with if you will get me drugs. Is that something that an otherwise law-abiding citizen that would – that would convince an otherwise law-abiding citizen to commit this criminal activity? That was the question that was sent to the jury and the jury rejected it. And we did argue strongly to the jury that this was not the kind of inducement that would persuade an otherwise law-abiding citizen to commit the crime. What's the response to opposing counsel's argument that the erroneous jury instruction led the jury to – to find that there was no entrapment? I don't think there was anything wrong with the jury instruction because I think what defense counsel is right about, what the defense is right, is that the inquiry for predisposition and the element of predisposition does – the question is what was the defendant's state of mind prior to being offered this opportunity? Right. I mean, that's the inquiry. That's why it's called predisposition. What was their state of mind beforehand? But what the Supreme Court said in Jacobson and what this court has said in case after case is that the number one factor in figuring out what the person's state of mind was prior to the opportunity is, well, what was their reaction when they were given the opportunity? Right? I mean, you look at what their response was to the opportunity. If I walk up to someone on the street and say, hey, can you sell me some drugs? And they say, sure, I've got cocaine, I've got meth, I've got whatever you need. Yeah, maybe I didn't know anything before I asked, but based on their reaction, I now know that they were predisposed. And that's exactly what happened here. At this dinner meeting, the confidential informant said, I need to get an ounce of meth and six to seven – six to seven ecstasy pills. And Mr. Bravati said, sure, yeah, that's no problem. I can get you anything you need. Are you sure you only need an ounce? The other one said. I can get you anything you need. The confidential informant says, do you think you can get it for me tomorrow? And Bravati says, I can get it for you tonight, no worries. We can do this right now. Confidential informant says, no, no, no, tomorrow will be fine. So the whole – I mean, this entire interaction from the informant saying, I need to get – and I did point out, the informant didn't even say, and could you get it for me, please? I mean, before he even had the answer, that's no problem, says Mr. Bravati. I can get it for you tonight. Are you sure you only need an ounce? I can get you – do you need any other kinds of drugs? Is there anything else that you need? That entire – that entire interaction was less than four minutes long. Now, yes, the inquiry is what was in the defendant's state of mind before he was offered the opportunity, but what Jacobson – what the Supreme Court said in Jacobson, the ready commission of the Criminal Act amply demonstrates the defendant's predisposition. Would you want to talk a little bit about the Pullman case? Yes, because I think the facts of Pullman are so different from the facts here. I mean, this is a case where – and I think that when the court said we can't look at the defendant's reactions, you know, what the defendant said after being contacted by law enforcement, you know, what the government was trying to look at was what the defendant was saying weeks after. I mean, for weeks the government was redirecting the conversation towards sex with children, right? I mean, the defendant kept – I mean, he kept saying he's interested in the mother, and they kept saying, no, no, no, I'm not interested for me. I want somebody to teach my six-year-old and eight-year-old. And this really poor, somewhat pathetic man, I mean, who had a lot of issues, after weeks and weeks was finally said, okay, this is what I'll do so that I can have a friend. But in Pullman, the government knew what the defendant was looking for and was offering him something else. Well, I don't know what the – you know, I don't know what the government was doing in that case. Obviously, it wasn't out of our office. But, I mean, but it does seem that – first of all, I thought that the statements that the undercover made were so vague at first. I mean, it really was – I mean, if you were – if there was a pedophile out there, that person might know immediately what the undercover was suggesting and kind of jump on it. This guy went on and on, and he wanted to teach them good values. He wanted to teach them morals. And she's like, that's not the kind of teacher I'm looking for. And after weeks and weeks of this, you know, eventually he said, you know, if that will get me close to you, yes, I'll do, you know, I'll do whatever it is that you want your children to be taught. So in that case, to say that it isn't appropriate to look at what the defendant said after contact probably would be worth looking at, you know, what he said immediately after contact, which, you know, his first – the first many messages indicated no interest whatsoever in engaging in that kind of criminal activity. Whereas here, what you have is immediate. I mean, before the informant even had the opportunity to ask the question, he said, I need to get meth. Sure, that's no problem. I can get it for you tonight. Is that all you need? Is an ounce enough? So based on Jacobson, I mean, I don't – I think that this idea – once again, yes, the question is, what was the defendant's state of mind beforehand? But looking at it after is the key thing. One thing that puzzled me is that under the actual instructions that were given to the jury, is there any doubt that it was decided wrong? That the jury would decide wrong? I think – well, I think that no. I mean, the jury had – this was sent to the jury. The jury could have decided that this, you know, the opportunity to help your friend's dad get his movie script produced, they – you know, the jury could have decided that that was sufficient inducement that an otherwise innocent person would have, you know, would have agreed to sell drugs for that purpose. They rejected that. They could have, you know, based on the inducement, they could have found lack of disposition – lack of predisposition if they had wanted to. I guess – excuse me. I guess what I'm getting at is it seems to me that the request that's being made is that there was an improper instruction, really, that the jury would have found differently if it had been instructed properly. But it wasn't, and there was no objection to this. Right. I think that the jury instruction issue that defense is raising – and she can say that better than I – but I think that she's saying that since the judge had the law wrong, therefore the instruction was wrong. If you don't agree that the judge had the law wrong – I mean, if the judge was right on the law, then the instruction was correct as well. And I would say that there was no error in the judge's understanding of the law, therefore there was no – there was no error in the judge's jury instruction. But, Judge, her question was whether or not there was an objection to the jury instruction. I don't think so. I mean, there had been – there had been a lot of discussion about, you know, about inducement and predisposition in the Rule 29. I don't know if there was a specific objection to that. The Court of Counsel represented to us that there was an objection to the instruction. You know, I'm sorry. The jury instruction wasn't briefed, and I don't have a recollection of it myself. I can – If it wasn't way brief, it was way brief. But I do agree. But I do agree. The question is – I mean, if the judge misunderstood the law of entrapment, you know, then there's a – then the jury instruction was wrong. But that's not the basis on which you're reversing. The only other point that I'd like to close with is that, you know, this issue was submitted to the jury. They had the issue, the information about Uncle Lou and the supposedly close relationship. There was very little evidence of a relationship between Bravatti and Uncle Lou, but there was some. But the jury rejected that. And the standard here is whether any reasonable jury could have concluded that there either was not inducement or that there was predisposition. And that's the standard here. Thank you. Yes, but when we're talking about what the jury found, and the argument had been that there is – the judge was wrong, that on the law, the place to – seems to me to have the argument is whether the instruction was proper or not. Yeah. I guess my only response to that would be that the judge was not wrong on the law. I mean, and that's the issue that was briefed, and I think that that's what we're talking about is sort of what the law of entrapment is. If you get to that next step, and then whether there was a – you know, if you were to find against the government on that step, and then you look at the jury instruction, I apologize. I would have to look to see whether there was an objection. Okay. Thank you. Thank you. Are there any questions? You are over. I have 17 seconds. You're within the red. Oh, what was the red? I'm sorry. Are there any questions of Ms. Foreman? Well, yeah. I'd like to know that the argument about the judge being wrong on the law, isn't the place to have argued that as on the correct instruction or not? There was an objection to the instruction, Your Honor, but the reason we're presenting this as a matter of law is that the judge was wrong on the law when he was assessing the 29A motion. We're asking for the same result that occurred in Pullman, which is that as a matter of law, that the relevant time frame – I'm quoting from Pullman – the relevant time frame for assessing a defendant's disposition comes before he has any contact with the government agents. If willingness alone were the test, Jacobson would have come out differently. And we're asking that you to look at how Judge Pro assessed the 29A. It's the same mistake that was made in the instruction, but the evidence isn't going to change. The government doesn't have any evidence of predisposition that occurred prior to the contact of the agents. And so that's why we're asking for the same result that occurred in Pullman. Okay. Thank you, Your Honor. Thank you. The case just argued is submitted for decision.
judges: Hug, Schroeder, Rawlinson